

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

DIANNE FOREHAND,

     Plaintiff,

v.                        Case No.: 4:11cv58

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

The plaintiff, Dianne Forehand ("Forehand"), brought this action under Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") under the Act.

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed November 15, 2011. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be VACATED.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Forehand filed an application for DIB with the Social Security Administration ("SSA") on May 15, 2008, alleging disability beginning June 2, 2007. R. 86-88.[1]

At the time of disability onset, Forehand was 52 years old. R. 86. She has a high school degree and has completed two years of college. R. 122. She has past relevant work experience as a computer technician and network engineer and administrator. R. 122. She is 5'7" and weighs 230 pounds. R. 36. In her original application, she listed rheumatoid arthritis ("RA"), hypertension, and sleep apnea as impairments that limited her ability to work. R. 114. She has also been diagnosed with asthma, restrictive airway disease, depression, esophagitis, irritable bowel syndrome, diabetes, hyperlipidemia, autoimmune liver disease, cervical disc disease, allergies, and obesity. R. 277-78, 323, 406, 408, 417, 469, 518-19. Her primary complaints are of fatigue and of pain and swelling in her joints, which limit her ability to use her hands and upper extremities and her ability to walk and sit for prolonged periods of time. R. 114.

The SSA initially denied her claim on August 11, 2008, R. 68-72, and upon reconsideration on March 6, 2009, R. 74-76. She requested a hearing before an Administrative Law Judge ("ALJ") of the SSA, and one was held on March 4, 2010. R. 33-51. At the

---

[1] "R." refers to the administrative record in this case.

hearing, Forehand was represented by counsel and testified as to the severity of her impairments. R. 35-51. Vocational expert ("VE") Edmund also testified. R. 47-50.

On April 13, 2010, the ALJ issued a decision finding Forehand not disabled under the Social Security Act. R. 10-22. Forehand requested review of the ALJ's decision by the Appeals Council, which denied her request on February 24, 2011. R. 1-4. This action made the ALJ's decision the final decision of the Commissioner, subject to judicial review in this Court pursuant to 42 U.S.C. § 405(g). 20 C.F.R. §§ 404.981.

Forehand timely filed a Complaint seeking review of the Commissioner's decision and award of benefits on April 1, 2011. ECF No. 1. On August 12, 2011, the Commissioner timely filed an Answer. ECF No. 11. On August 31, 2011, Forehand filed a Motion for Summary Judgment or in the Alternative, Motion for Remand and supporting memorandum. ECF Nos. 14-16. On October 31, 2011, the Commissioner filed a Motion for Summary Judgment and supporting memorandum. ECF Nos. 18-19. On November 14, 2011, Forehand filed a reply. ECF No. 20. At this time, the case is fully briefed. Because neither party has indicated special circumstances requiring oral argument, the Court's findings and recommendations are based on the motion papers and memoranda. See Local Civil Rule 7(J).

## I. **DISABILITY DETERMINATION**

-3-

The federal Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. §§ 404.1505(a); see also 42 U.S.C. § 423(d)(1)(a). To meet this definition, the claimant must have a severe impairment that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.[3] 20 C.F.R. §§ 404.1505(a); see also 42 U.S.C. § 423(d)(2)(A).

## A. Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 20 C.F.R. § 404.1520. This analysis requires the ALJ to determine, in sequence:

---

[2] A "medically determinable physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).
[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510.

-4-

(1)   Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working). If so, the claimant is not disabled and the inquiry is halted.

(2)   Whether the claimant has a severe impairment.[4] If not, then the claimant is not disabled and the inquiry is halted.

(3)   Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant is disabled and the inquiry is halted.

(4)   Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5)   Whether the claimant is able to perform any other work considering both his residual functional capacity and vocational profile. If so, the claimant is not disabled.

Before proceeding to step four, the ALJ must determine the claimant's residual functional capacity ("RFC")—that is, the most the claimant can do in a work setting despite the physical and

---

[4] A severe impairment must be medically determinable and must, on its own or in combination with other physical or mental impairments, significantly limit a claimant's ability to engage in basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c).

-5-

mental limitations of his impairments and any related symptoms, e.g., pain. See 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

Prior to step five, the burden of proving disability rests on the claimant. Bowen v. Yuckert, 482 U.S. 137, 148 n.5 (1987); 20 C.F.R. §§ 404.1545(a)(3). If the ALJ determines, based on the claimant's RFC, that he is not able to perform past relevant work, the burden shifts to the Commissioner to show that jobs exist in significant numbers in the national economy that the claimant could perform in light of his RFC, age, education, and past work experience. Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). In this case, the ALJ made it to step five, at which point he determined that Forehand could adjust to other work in the economy. R. 22.

## B. Steps One through Three

As an initial matter, the ALJ found that Forehand meets the insured status requirements of the Act through December 31, 2012, R. 15, meaning that she needs to establish disability on or before that date in order to be eligible for benefits. 42 U.S.C. § 423(a)(1)(A), (C); 20 C.F.R. §§ 404.101, 404.120, 404.315(a).

At step one, the ALJ found that Forehand has not been engaged in substantial gainful activity since June 2, 2007, her alleged onset date of disability. R. 15.

At step two, the ALJ found that rheumatoid arthritis and obesity constituted medically determinable impairments that

-6-

significantly limited Forehand's ability to engage in basic work
activities. R. 15. The ALJ found Forehand's remaining impairments
nonsevere because they did not exist for a continuous period of at
least 12 months, were responsive to medication or did not require
significant medical treatment, or did not result in continuous
functional limitations. R. 15. He specifically found that
Forehand's asthma, diabetes, sleep apnea, and restrictive airway
disease were well controlled with treatment. The ALJ acknowledged
her history of cervical degenerative disc disease, irritable bowel
syndrome, esophagitis, and abnormal liver function, but found that
these impairments did not significantly limit her ability to
perform basic work activities. R. 15-16. The ALJ also examined
treatment notes concerning Forehand's depression diagnosis but did
not find evidence that the condition significantly affected her
daily activities, social functioning, concentration, persistence or
pace. R. 16. She had not sought or received any significant
psychiatric or psychological treatment, and there was no evidence
of episodes of decompensation. R. 16. Accordingly, the ALJ
concluded that Forehand's depression was nonsevere.[5] R. 16.

---

[5] The federal regulations outline a special technique for
determining the severity of a mental impairment. See 20 C.F.R.
§ 404.1520a. It involves rating an individual's functional
limitations in the areas of activities of daily living; social
functioning; concentration, persistence, or pace; and episodes of
decompensation according to the severity or frequency of the
limitation. 20 C.F.R. § 404.1520a(c). The ALJ applied this
technique.

-7-

At step three, the ALJ found that Forehand does not have an impairment or combination of impairments that meets or is medically equal to an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. R. 16. In reaching this conclusion, the ALJ specifically considered the impact of Forehand's obesity on her other impairments pursuant to Social Security Ruling 02-1p, 2000 WL 628049 (Sept. 12, 2002). He nevertheless concluded that "even when the [claimant's] excessive weight is considered in conjunction with the other impairments, there is no evidence of any symptoms that fulfill the requirements of any impairment listed in 20 C.F.R. Part 4, Subpart P, Appendix 1." R. 17.

## C. RFC Determination

Prior to step four, the ALJ assessed Forehand's RFC. He found that

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)[6] except: the claimant can lift up to 10 pounds occasionally, sit for 6 hours in an 8-hour workday and walk or stand for up to 2 hours in an 8-hour workday. The claimant can perform work activities that do not require more than occasional pushing or pulling of more than 10 pounds and tasks not requiring climbing or working around unprotected heights or dangerous machinery.

---

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

-8-

> The claimant can perform work activities that require gross use of her hands but no frequent grasping.

R. 17.

In reaching this conclusion, the ALJ first considered Forehand's testimony concerning the limitations that her impairments cause. R. 17. Forehand testified that her biggest problem was rheumatoid arthritis ("RA"). R. 36. She described her pain as intense, sharp, tendonitis-like, immobilizing. R. 45. She explained that the pain is caused by migratory swelling that she experiences in her hands, shoulders, elbows, knees, and hips roughly two times a week, which lasts two to three days. R. 38-40. She also complained of fatigue associated with the RA. R. 38-40.

She testified that pain from her RA significantly limits her functional abilities. She explained that she quit her job as a network engineer because the pain caused her to be absent from work too often and made her unable to perform her duties of carrying computer equipment and moving around frequently. R. 37, 41.

She estimated that she could carry five to ten pounds and that she could sit for thirty minutes at a time before needing to stand up and walk around due to pain in her hips. R. 41, 43. On the days when Forehand's knees are swollen, she cannot stand at all, and when her knees are not swollen she gets weak and can only walk a short distance. R. 41. She testified that she uses a rollator to walk and, occasionally, crutches, both of which have been

-9-

prescribed for her. R. 43. On good days, she can go shopping with her daughter, who pushes the cart while Forehand rides the "buggy." R. 40-41.

When Forehand has swelling in her hands, she loses the ability to close them and to grasp things. R. 42. She has dropped items as a consequence. R. 42. Although she cannot vacuum, she is able to sit at a table and do laundry occasionally. R. 40. She stated that when her swelling is bad she stays in bed or on the couch, and the only thing that helps alleviate her pain is ice. R. 44. On such days, she does not leave the house, which she explained, is why her treating rheumatologist, Dr. Wallingford, has not observed swelling in her joints R. 46. She also testified that she takes one or two naps every day for roughly an hour a piece. R. 45.

Although Forehand was taking Methotrexate and Prednisone at the time of the hearing, she testified that she did not receive relief from these medications. R. 37. She further explained that she was previously receiving steroid injections for the swelling, but that the trip was not worth the relief she received. R. 46. She stated that she did not take medication for her Type II diabetes and that she uses Advair for her restrictive airway disease. R. 47.

The ALJ found that Forehand suffered from a medically determinable impairment that could reasonably be expected to cause pain and fatigue. R. 17. He concluded, however, that the record did not support the "degree of limitation alleged." R. 17. He therefore

determined that Forehand's "statements concerning the intensity, persistence and limiting effects of these symptoms are only partially credible to the extent they are inconsistent with the above residual functional capacity assessment . . . ." R. 19.

The ALJ next examined the medical opinion evidence. R. 19. The ALJ gave the opinion of the state disability determination services ("DDS") medical consultant, Dr. Cole, significant weight. Dr. Cole found Forehand capable of carrying twenty pounds occasionally and ten pounds frequently, standing or walking for six hours in an eight hour day and sitting for the same amount of time. R. 19, 375. The ALJ nevertheless stated that he gave Forehand "the benefit of every doubt by restricting the amount of weight she [could] lift to 10 pounds and the amount of time she can walk or stand to 2 hours." R. 19.

The ALJ gave significant weight to the opinion of Dr. Wallingford, Forehand's treating rheumatologist, to the extent that Dr. Wallingford found her able to lift up to twenty pounds occasionally and walk or stand for one to two hours in an eight hour day. R. 19, 465. He also gave significant weight to Dr. Wallingford's finding that Norton was capable of "sedentary work."[7]

---

[7] The Court's review of the record reveals that Dr. Wallingford did not explicitly express that Forehand was capable of sedentary work. The ALJ appears to have drawn this conclusion from the fact that Dr. Wallingford found her capable of occasionally lifting ten to twenty pounds and of sitting for six hours in an eight hour day and

-11-

R. 19. The ALJ nevertheless gave minimal weight to Dr. Wallingford's opinion that Forehand needed to alternate between sitting and standing every thirty to sixty minutes, finding that this opinion was not supported by examination notes. R. 19.

With respect to Dr. Muench, Forehand's treating family physician, the ALJ discounted the opinion that Forehand was disabled because it was inconsistent with Dr. Muench's concurrent statement that Forehand was capable of performing sedentary work and because such a finding is reserved to the Commissioner. R. 19, see 20 C.F.R. § 404.1527(d). The ALJ gave Dr. Muench's opinion that Forehand was capable of sedentary work significant weight because it was consistent with objective findings and her treatment regimen, which the ALJ classified as conservative. R. 19.

Finally, the ALJ considered the opinions of Dr. Givens, Forehand's treating pulmonary physician. R. 19. Dr. Givens believed that Forehand was capable of lifting a maximum of five pounds, that she would miss work more than three days a month, and that she would need unscheduled hourly breaks to address fatigue. R. 19, 514. The ALJ found these opinions inconsistent with the objective evidence and Dr. Wallingford's opinions. R. 19. He also believed them to be based, at least in part, on Forehand's subjective complaints, which he found only partially credible. R. 19-20.

---

for standing or walking for two hours in an eight hour day. R. 465-66.

Accordingly, the ALJ gave the opinions of Dr. Givens only minimal weight. R. 20.

The ALJ concluded from the medical opinion evidence, Forehand's partially credible testimony, and the clinical evidence in the record, that Forehand suffered from "intermittent joint pain that limits [her] ability to lift, stand, walk, and stand [sic] but not to [t]he degree that would prevent her from performing sustained work activities at the sedentary exertional level with the additional limitations incorporated by the residual functional capacity." R. 20.

### D.  Steps Four and Five

Based on the testimony of VE Edmund, the ALJ concluded at step four that Forehand did not retain the RFC to perform any of her past relevant work. R. 21.

At step five, the ALJ considered Forehand's vocational profile. He noted that Forehand was an individual closely approaching advanced age at the date of disability onset and that she subsequently changed age categories to an individual of advanced age.[8] R. 20. He next noted that Forehand had completed

---

[8] Age is a vocational factor to the extent that advancing age limits a person's ability to adjust to other work in the economy. See 20 C.F.R. § 404.1563(a). A person aged 50-54 is considered closely approaching advanced age, and age is considered to seriously affect that person's ability to adjust to other work. Id. § 404.1563(d). A person over 55 is of advanced age, and age is considered to significantly affect that person's ability to adjust to other work. Id. § 404.1563(e).

high school. R. 20. Finally, based on the testimony of the VE, which he gave full credit, the ALJ concluded that Forehand had acquired transferable work skills such as "making reports, record keeping and computer skills, including knowledge of assembly, software and hardware problems . . . . the ability to instruct users of computers, the ability to test and inspect computers and the ability to resolve advanced problems with the computer."

Considering that Forehand's RFC prevented her from performing the full range of sedentary work, the ALJ determined that it was appropriate to use the Medical Vocational Guidelines ("Grids") in Appendix 2 of 20 C.F.R. Part 404, Subpart P, only as a framework.[9] R. 21. Accordingly, the ALJ asked the VE whether an individual with Forehand's vocational profile and RFC could perform jobs that existed in the economy. R. 21, 48. The VE responded that such an individual could perform work as a computer help desk worker or a computer security specialist, each of which exists in significant numbers in the national and local economy. R. 21, 49. The ALJ found the VE's testimony consistent with the Dictionary of Occupational Titles. R. 21.

In response to Forehand's counsel's questions the VE testified that these jobs would not be available to someone who needed to take unscheduled breaks every thirty to sixty minutes or who would

_____

[9] The ALJ noted that if Forehand could perform the full range of sedentary work, the Grids would have directed a finding of not disabled. See 20 C.F.R. Pt. 404, Subpt. P, Rule 201.07.

be absent from work at least three times per month. R. 49-50. The ALJ found this testimony irrelevant because he did not find Forehand so limited in her functional abilities. R. 21

Based on the VE's testimony in response to his hypothetical and reference to rules 201.07 and 201.15 of the Grids, the ALJ concluded that a finding of "not disabled" was appropriate and issued a decision to that effect. R. 22.

## II.  ASSIGNMENTS OF ERROR

Forehand attacks two primary components of the ALJ's decision: (1) the RFC assessment and (2) the finding that she can successfully adjust to other work that exists in significant numbers in the economy. With respect to the RFC assessment, she argues that the ALJ failed to properly weigh the opinions of her treating physicians and credit her testimony concerning the severity and limiting effects of her impairments. Pl.'s Supp. Mem. at 10-19, ECF No. 16. With respect to the finding that she can successfully adjust to other work, Forehand argues that the ALJ improperly relied on the flawed testimony of the vocational expert. Id. at 19-20.

## III.  STANDARD OF REVIEW

Where the Appeals Council denies review of an ALJ's decision, the decision of the ALJ becomes the final decision of the Commissioner. See Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991); 20 C.F.R. § 404.955. The

-15-

Court reviews final decisions of the Commissioner to determine whether they are supported by substantial evidence in the administrative record and based on the correct application of the law. 42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curium); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by an [ALJ] . . . is not binding if it was reached by means of an improper standard or misapplication of law.").

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter, 993 F.2d at 34 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 497, 599 (4th Cir. 1979)). "Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. The Court must nevertheless "give careful scrutiny to the whole record to assure that there is a solid foundation for the [Commissioner's] findings and that his

-16-

conclusion is rational." <u>Viteck v. Finch</u>, 438 F.2d 1157, 1157-58 (4th Cir. 1971). If the fact finder fails to assess the probative value of competing evidence or articulate the bases for conclusions, meaningful review cannot be accomplished. <u>See Meyer v. Astrue</u>, 662 F.3d 700, 707 (4th Cir. 2011); <u>DeLoatche v. Heckler</u>, 715 F.2d 148, 150 (4th Cir. 1983).

Based on the Court's review of the record, the Court FINDS that substantial evidence does not support the ALJ's finding that Forehand is not disabled. Specifically, the ALJ ignored pertinent medical opinion evidence and failed to sufficiently explain his reasons for the weight given to other opinion evidence in reaching the RFC determination. From this it follows, that the ALJ's finding as to Forehand's credibility and the hypothetical he posed to the VE are also unsubstantiated. Accordingly, the Court recommends remanding the case for fact finding consistent with the standards outlined herein.

## IV. **ANALYSIS**

### A. **RFC Determination**

The RFC determination requires consideration of all relevant evidence in a claimant's case record and the limiting effects of all her impairments, even those that are not severe. 20 C.F.R. § 404.1545(a), (e). The regulations recognize that "[p]ain or other symptoms may cause limitation of function beyond that which can be determined on the basis of anatomical, physiological, or

-17-

psychological abnormalities alone . . . ." Id. at § 404.1545(e).
Accordingly, the fact finder must consider both objective medical
evidence as well as evidence of "what may precipitate or aggravate
[a claimant's] symptoms, what medications, treatments or other
methods [a claimant] use[s] to alleviate them, and how the symptoms
may affect [a claimant's] pattern of daily living" in determining
the functional limitations caused by pain and other symptoms. 20
C.F.R. § 404.1529(c). Although the ALJ need not address every piece
of evidence in the record, an ALJ must articulate the bases for his
findings and may not "cherry-pick" evidence that supports a
preordained RFC determination. See Denton v. Astrue, 596 F.3d 419,
425 (7th Cir. 2010); McCain v. Astrue, No. 4:11CV69, 2012 WL
928504, at *7 (E.D. Va. Feb. 22, 2012).

Forehand contests the ALJ's RFC determination. Specifically,
she argues that in performing the RFC assessment, the ALJ
improperly weighed the medical opinion evidence in the record and
discredited her testimony. Having reviewed the entire record, the
Court agrees.

## 1. Weight Assigned to Opinion Evidence

The Court finds the ALJ's consideration of the medical opinion
evidence in reaching the RFC determination wholly inadequate. The
federal regulations governing disability decisions require the fact
finder to evaluate every medical opinion and give good reasons for
the weight assigned to a treating source's opinion on the nature

-18-

and severity of the claimant's impairments. See 20 C.F.R. § 404.1527(c); SSR 96-2P, 1996 WL 374118, at *4 (1996). "[W]hen a physician offers specific restrictions or limitations [affecting a claimant's ability to work] the ALJ must provide reasons for accepting or rejecting such opinions." Timmer v. Astrue, No. 3:10CV639, 2011 WL 4589998, at *4 (E.D. Va. Sept. 7, 2011).

Generally, the opinion of a claimant's treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). When an ALJ determines that the opinion of a treating physician is not entitled to controlling weight, the ALJ must examine all the medical opinion evidence in the record and assign weight to such opinions based on the following factors: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; (5) the physician's specialization; and (6) other factors, such as the source's familiarity with the SSA's disability programs and other evidence in the claimant's case record. 20 C.F.R. §§ 404.1527(c)(1)-(6). As with all findings in a disability decision, a logical nexus must exist between the weight accorded to opinion evidence and the record, and the reasons for assigning such weight must be "sufficiently articulated to permit

-19-

meaningful judicial review." DeLoatche, 715 F.2d at 150; see Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003); Young v. Astrue, 771 F. Supp. 2d 610, 619 (S.D.W. Va. 2011).

Here, the ALJ violated these rules by principally relying on objective clinical findings and what he considered to be Forehand's conservative treatment regimen,[10] to the exclusion of other factors, in weighing the opinions of Forehand's treating physicians. The Court finds further error in the ALJ's mischaracterization of the record and complete disregard of Drs. Muench and Massey's opinions.

## i.   The ALJ Failed to Consider and Appropriately Weigh the Opinions of Forehand's Treating Physicians

On September 17, 2009, Dr. Wallingford evaluated Forehand's condition in a Rheumatoid Arthritis Impairment Questionnaire. R. 462-468. At that time, he had been Forehand's treating rheumatologist for six months and had treated her three times. R. 462. He rated her pain as six out of ten and posited that she could sit for eight hours in a day and stand or walk for one to two. R. 465. He also estimated that she would need to "get up and

---

[10] In considering the objective clinical evidence of Forehand's impairments, it appears that the ALJ may have overlooked clinical evidence that supports the severity of her condition. For example, records from Dr. Wilson, Forehand's treating rheumatologist prior to Dr. Wallingford, reveal that she had swelling in her hands and arthritic nodules on both Achilles tendons, common symptoms of RA, upon examinations in 2007 and 2008. R. 336, 341. Moreover, Forehand's rheumatoid factor increased from 53 in 2002, to 81.5 in 2007, to 93.8 in 2009. R. 230, 333, 395. It is not the Court's position to assign significance to these findings; however, the ALJ apparently assigned no significance to them whatsoever despite their apparent relevance.

move around" every thirty to sixty minutes for two to five minutes at a time. R. 465. At another point in the questionnaire, he stated that she would need to take unpredictable breaks during the day to relieve pain. R. 467. Dr. Wallingford estimated that Forehand could occasionally lift up to twenty pounds and frequently lift five pounds. R. 466. He responded affirmatively when asked if Forehand's impairments were likely to produce "good days" and "bad days" and estimated that she would be absent from work an average of at least three days per month. R. 467.

Dr. Muench had been Forehand's treating family physician for two years at the time he filled out the Multiple Impairment Questionnaire for Forehand on September 17, 2009. R. 469-476. Dr. Muench estimated that Forehand's pain and fatigue measured eight on a ten point scale. R. 471. He was not certain how many hours Forehand could sit or stand/walk in an eight our day, but estimated that she would need to move about every two hours for fifteen minutes. R. 471-72. Like Dr. Wallingford, Dr. Muench believed that Forehand's impairments would cause her to be absent from work at least three days every month. R. 475. On October 20, 2009, Dr. Muench wrote a letter stating "[i]t is my opinion that due to her diagnosis of rheumatoid arthritis, autoimmune liver disease, asthma, hypertension and diabetes mellitus [Forehand] meets social security's definition of disabled. She can only perform sedentary work." R. 502.

-21-

Dr. Givens had been Forehand's treating pulmonary physician for over a year when he filled out the Pulmonary Impairment Questionnaire on October 9, 2009. R. 509. He estimated that Forehand could occasionally lift and carry up to five pounds. R. 512. He did not know how long Forehand could sit or stand/walk in an eight hour day, but estimated that she would need to take unscheduled breaks to rest on an hourly basis. R. 514. He also believed that Forehand's conditions would cause her to be absent from work more than three times each month. R. 514.

All three doctors noted that Forehand's symptoms would frequently interfere with her ability to concentrate. R. 466, R. 474, R. 514.

The ALJ failed to sufficiently evaluate and provide reasons for the weight assigned to these doctors' opinions. First, the ALJ altogether ignored the opinions that Dr. Muench expressed in the Multiple Impairment Questionnaire. Of all the doctors to express opinions concerning Forehand's limitations, Dr. Muench was likely the most familiar with her condition considering the length of their treatment relationship. Dr. Muench referred Forehand to Drs. Wallingford and Givens as well as other specialists during his treating relationship with her, R. 279, 417, and the record is replete with examination and treatment notes from Dr. Muench covering the relevant time period. The ALJ's failure to consider and weigh the opinions that Dr. Muench expressed in the Multiple

-22-

Impairment Questionnaire not only impacts the Court's review of the weight the ALJ assigned to other opinion evidence, but it also amounts to legal error under 20 C.F.R. § 404.1527.[11]

Second, the ALJ failed to provide a sufficient explanation for rejecting Dr. Wallingford's opinion that Forehand needed to alternate positions every thirty to sixty minutes. R. 19. The ALJ rejected this opinion as inconsistent with examination notes

---

[11] The Court also notes that the ALJ engaged in erroneous reasoning in assigning weight to the opinions expressed in Dr. Muench's October 2009 letter. The ALJ gave significant weight to the opinion that Forehand was capable of performing sedentary work and no weight to the finding that she was disabled under the SSA's definition. The ALJ found the former opinion "consistent with objective findings on examinations and the conservative treatment she has required" and the latter "reserved to the Commissioner" and "not consistent with the finding that she can perform sedentary work." R. 19.

Dr. Muench's opinion that Forehand meets the definition of disability is a finding reserved to the Commissioner, 20 C.F.R. § 404.1527(d); however, as the opinion of a treating physician, it may not be summarily ignored and must be evaluated in light of the evidence in the record. See SSR 96-5P, 1996 WL 374183, at * 3 (July 2, 1996). Here, the ALJ provided no more than a perfunctory explanation for rejecting it. Moreover, a finding that an individual is capable of performing sedentary work is not incompatible with a finding that the same individual is disabled. Sedentary work is the label given to jobs that require minimal physical exertion. See 20 C.F.R. § 404.1567. At the same time, individuals may have nonexertional limitations such as needing to regularly alternate between sitting and standing or difficulty concentrating or interacting with others that significantly erode the sedentary occupational base and make a finding of disabled appropriate. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 Rule 200.00(e)(1); SSR 96-9P, 1996 WL 374185, at * 4 (July 2, 1996) ("[I]n order for a rule to direct a conclusion of "not disabled," an individual must also have no impairment that restricts the nonexertional capabilities to a level below those needed to perform unskilled work . . . at the sedentary level.").

showing that Forehand had good strength in her extremities and a normal gait and station. R. 19. Although it is true that Forehand consistently exhibited normal gait, station, and muscle strength upon examination, R. 274, 279, 282, 286, 292-95, the ALJ failed to identify a logical nexus between these findings and Dr. Wallingford's opinion. Without additional reasoning, the Court has difficulty understanding how evidence of Forehand's ability to ambulate effectively and use her extremities has any bearing on her capacity to remain in a seated position for a prolonged period of time. Forehand, in fact, testified that her inability to sit for longer than an hour was due to pain in her hips. R. 43.

It is noteworthy that Forehand's treating physicians seem to be in disagreement about Forehand's sitting capacity. While Dr. Wallingford found it limited to thirty to sixty minutes, Dr. Muench believed Forehand capable of sitting for up to two hours. R. 471. Dr. Givens, on the other hand, believed that she would likely need to take hourly unscheduled breaks. R. 514. The ALJ made no attempt to reconcile these opinions, two of which suggest that Forehand's impairments may limit the sedentary jobs available to her. SSR 96-9P, 1996 WL 374185, at *7 ("Where [the need to alternate between sitting and standing] cannot be accommodated by scheduled breaks [at approximately two hour intervals] and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded."). When the fact finder fails to assess the probative

-24-

value of competing evidence, meaningful judicial review cannot be accomplished. See Meyer, 662 F.3d at 707. Here, the ALJ failed to provide a logical reason for rejecting Dr. Wallingford's opinion regarding Forehand's sitting capacity and has further frustrated the Court's ability to review this finding because he failed to assess the probative value of Drs. Muench and Givens's related opinions.

Third, the ALJ misconstrued the record and failed to consider the concurring opinions of Drs. Wallingford and Muench in rejecting Dr. Givens's opinion that Forehand would likely miss at least three days of work each month due to her impairments. The ALJ dismissed this opinion, expressed in the Pulmonary Impairment Questionnaire, in part, because it was inconsistent Dr. Wallingford's findings. R. 19. This statement is puzzling because the ALJ did not specify with which of Dr. Wallingford's findings Dr. Givens's opinion was inconsistent, and when asked to estimate the frequency of Forehand's absences from work as a consequence of her condition, Dr. Wallingford checked the space next to "[m]ore than three times a month." R. 467, 475, 514. It appears then, that the ALJ misconstrued the record in finding Dr. Givens's opinion inconsistent with Dr. Wallingford's.

More importantly, the ALJ utterly failed to consider Drs. Wallingford and Muench's opinions that Forehand would likely be absent from work at least three times a month in weighing Dr.

-25-

Givens's opinion. The federal regulations provide that when an ALJ finds a treating physician's opinions not entitled to controlling weight, the ALJ must assign weight to the opinion with reference to the six factors in 20 C.F.R. § 404.1527(c). Consistency with the record as a whole is one of the factors an ALJ must consider. Surely, the fact that Drs. Wallingford and Muench, two of Forehand's treating physicians, held the same belief as Dr. Givens about her likely absenteeism bears on the weight of that opinion. That the ALJ failed to acknowledge and account for such consistency amounts to legal error. This error is particularly egregious in light of the fact that the ALJ dismissed the VE's testimony that an individual who is expected to be absent at least three times a month would not be able to perform work in the economy as irrelevant because he assigned little weight to Dr. Givens's opinion. R. 21, 50.

### ii.  The ALJ Failed to Weigh Dr. Massey's Opinion

On February 2, 2009, Dr. Massey performed a consultative examination of Forehand and reviewed some of her previous treatment records. R. 368. He expressed his findings in a letter dated March 2, 2009. R. 368-72. He found Forehand's prognosis to be guarded and believed her capable of performing "clerical, administrative, sedentary type activity." R. 372. He noted that Forehand was limited to sitting for thirty minutes at a time but that she had "no trouble using her hands with repetitive movements." R. 370.

-26-

Although the ALJ cited Dr. Massey's letter as evidence that Forehand's testimony was only partially credible,[12] he failed to assign weight to any of Dr. Massey's opinions despite their apparent relevance to the RFC analysis.

The fact finder in social security cases is charged with weighing opinion evidence, and it is not the Court's prerogative to step into the shoes of the fact finder on review. See Meyer, 662 F.3d at 707. In light of the ALJ's haphazard and legally erroneous assessment of the opinion evidence in the record, the Court cannot conclude that substantial evidence supports the RFC assessment.

## 2. Credibility of Norton's Testimony

It follows from the foregoing analysis that the ALJ's decision to credit Forehand's testimony only to the extent that it comported with the RFC determination is necessarily flawed. Specifically, Forehand's testimony about her sitting capacity is consistent with Dr. Wallingford's opinion, and her testimony that she quit working because of her frequent absences corroborates her physicians' opinions that she would likely be absent from work at least three times a month. On remand, the ALJ is cautioned against making credibility determinations based on a predetermined RFC assessment.

---

[12] The Court notes that in analyzing Forehand's credibility the ALJ stated that Dr. Massey found no evidence of arthritic nodes. R. 18. In fact, Dr. Massey's examination revealed "evidence of subcutaneous nodules on both elbows and both heels secondary to [Forehand's] arthritis." R. 370. On remand, this factual error, which apparently affected the ALJ's credibility analysis, should be corrected.

-27-

Moreover, although the ALJ need not accept Forehand's allegations of pain and other symptoms to the extent they are <u>inconsistent</u> with objective evidence in the record, he may not discredit them solely because they are <u>not substantiated by</u> objective medical evidence. See <u>Hines v. Barnhart</u>, 453 F.3d 559, 565 & n.3 (4th Cir. 2006) (holding that claimant could rely on subjective evidence of disabling pain where objective evidence established the existence of an impairment that could reasonably be expected to cause the pain). Should the ALJ again make a negative credibility determination, he must specify the reasons for the decision and the evidence informing it. <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir. 1985); <u>Ivey v. Barnhart</u>, 393 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005).

## B. <u>Vocational Expert Testimony</u>

Forehand argues that the ALJ's finding that she was capable of performing jobs that existed in significant numbers in the national economy was not supported by substantial evidence because it was based on the flawed testimony of the VE. This conclusion also follows from the Court's determination that substantial evidence does not support the ALJ's RFC assessment.

The ALJ based his conclusion that Forehand was capable of successfully adjusting to other work based on the VE's testimony. R. 21. At hearing, the ALJ asked the VE the following hypothetical: Can an individual of Forehand's age, education, and work experience

-28-

who can lift and carry ten pounds occasionally, sit for six hours in an eight hour day; walk and stand two hours in an eight hour day, who has gross use of her hands, but cannot engage in frequent grasping, cannot push or pull more than ten pounds occasionally, and cannot climb or work around unprotected heights or dangerous machinery adjust to jobs in the economy? R. 48. The VE responded that such an individual would be able to perform the jobs of computer help desk worker, which is a skilled or semi-skilled job, and computer security specialist, which is a skilled job. R. 49. The VE testified that these jobs existed in significant numbers in the national and local economies. R. 49.

Forehand's attorney then asked the ALJ if someone who needed to take ten to fifteen minute unscheduled breaks every thirty to sixty minutes or who would be absent at least three times a month could perform the jobs mentioned. R. 49-50. The VE responded that either limitation would preclude employment. R. 50. She further testified that most jobs allow up to only two absences per month. R. 50. The ALJ found the VE's response to this line of questioning irrelevant because objective findings in the record did not support these limitations. R. 21.

For a vocational expert's opinion "to be relevant or helpful, it must be . . . in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citations omitted). Because the

-29-

hypothetical that the ALJ posed to the VE was based on an unsubstantiated RFC assessment, it cannot constitute substantial evidence for the ALJ's finding that Forehand could adjust to other work in the economy. Accordingly, the Court FINDS the ALJ's conclusion that Forehand could adjust to other work in the economy erroneous.

## V.   CONCLUSION AND RECOMMENDATIONS

Where the Commissioner fails to develop an accurate and logical nexus between the evidence in the record and the result, meaningful review cannot be accomplished. See DeLoatche, 715 F.2d at 150; Blakes ex rel. Wolfe, 331 F.3d at 569; Young, 771 F. Supp. 2d at 619. The Court FINDS that the ALJ failed to sufficiently consider and weigh the medical opinion evidence in the record, and as a consequence, the Court cannot conclude that substantial evidence supports the ALJ's RFC determination. Because the ALJ's RFC determination affected the credibility she assigned Forehand's testimony and the conclusion that Forehand could adjust to other work in the economy, these findings are also erroneous.

Although the Court is unable to conclude that substantial evidence supports the ALJ's decision that Forehand is not disabled, the ALJ's failure to appropriately consider and weigh the evidence in the record makes the Court unable to recommend an outright award of benefits. Accordingly, remand for rehearing pursuant to sentence four of 42 U.S.C. § 405(g) is the most judicious course. On remand,

the Commissioner is directed to evaluate all the medical evidence in the record and present his findings, in reviewable form, in accordance with the standards discussed herein.

Based on the foregoing findings, the Court RECOMMENDS that Plaintiff's motion for summary judgment be GRANTED to the extent that it seeks remand for rehearing and DENIED to the extent that it seeks an award of benefits. ECF Nos. 14-15. It further RECOMMENDS that Defendant's motion for summary judgment be DENIED. ECF No. 18. Finally, the decision of the Commissioner should be VACATED and REMANDED for further administrative proceedings consistent with this report and recommendation.

## IV. **REVIEW PROCEDURE**

By copy of this Report, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this Report or specified findings or

-31-

recommendations to which objection is made. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

July 5, 2012

-32-

## <u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to the following:

> Joel C. Cunningham , Jr.
> Joel C. Cunningham, Jr. PC
> 120 Edmunds Blvd
> PO Box 459
> Halifax, VA 24558
> *Counsel for Plaintiff*

> Virginia Lynn Van Valkenburg
> United States Attorney Office
> 101 W Main St
> Suite 8000
> Norfolk, VA 23510
> *Counsel for Defendant*

Fernando Galindo,
Clerk of Court

By: _____
Deputy Clerk

July  5, 2012

-33-